| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, STATE OF COLORADO<br><br>**COURT ADDRESS:**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: February 13, 2023 2:51 PM<br>FILING ID: 912129BE9BF19<br>CASE NUMBER: 2023CV30484 |
| **Plaintiff(s):**<br><br>**SIMCHAT TORAH BEIT MIDRASH, A NONPROFIT CORPORATION**<br><br>v.<br><br>**Defendant(s):**<br><br>**PHILADELPHIA INDEMNITY INSURANCE COMPANY** | ▲ COURT USE ONLY ▲ |
| Attorneys for Plaintiff:<br><br>Kenneth R. Fiedler, Esq.<br>James R. Anderson, Esq.<br>**KEN FIEDLER INJURY LAW**<br>4725 S. Monaco St., Suite 120<br>Denver, CO 80237<br>Telephone: (720) 996-6000<br>Fax Number: (720) 696-7962<br>E-mail: Ken@kfinjurylaw.com<br>         James@kfinjurylaw.com | Case Number:<br>Division: |
| **COMPLAINT AT LAW AND JURY DEMAND** | |

Plaintiff, through its attorneys, for its Complaint at Law, states and alleges as follows:

**PARTIES**

1. At all times relevant to this action, Plaintiff Simchat Torah Beit Midrash (STBM) is a not-for-profit organization formed in the State of Colorado and owns the property located at 18999 East Mainstreet, Parker, Colorado 80134 (Property).

2. Defendant Philadelphia Indemnity Insurance Company (Philadelphia) is an insurance company qualified to do business and doing business in the State of Colorado and

1

provides homeowner's insurance coverage to individuals within the State of Colorado. Philadelphia lists its registered agent as C T Corporation System, 7700 E. Arapahoe Rd. Suite 220, Centennial, CO 80112.

## INTRODUCTION AND NATURE OF THE CASE

3. This is a breach of contract, common law first-party insurance bad faith and statutory unreasonable conduct case arising from Philadelphia's unreasonable behavior in delaying and/or denying property insurance benefits to Plaintiff pursuant to a contract of insurance subject to the laws of the State of Colorado.

4. Plaintiff suffered damage to their Property as a result of wind and storm damage due to a windstorm on December 15, 2021.

5. The damage to Plaintiff's Property prompted Plaintiff to file a claim under its commercial property insurance policy with Philadelphia, which had coverage for damage of this nature.

6. Philadelphia retained a third-party administrator, Engle Martin and Associates (Engle Martin) to adjust the claim on its behalf. Engle Martin's actions since the beginning were adversarial and obviously taken in anticipation of litigation even before properly investigating and evaluating Plaintiff's claim for damages.

7. Both Engle Martin and Philadelphia continued to ignore numerous communications from Plaintiff's public adjuster, Peter Ridulfo of Claims Pro Public Adjusters, and unreasonably delayed responses to the few communications they did respond to.

8. Philadelphia has also unreasonably denied Plaintiff owed benefits by claiming the damages are far less than what they actually are in an attempt to pay less that what it owes Plaintiff for the claim and putting the insured's own interests ahead of those of the Plaintiff.

9. Philadelphia has also breached its contract with Plaintiff and has done so unreasonably and with knowledge or reckless disregard, by denying Plaintiff's claim despite Plaintiff's repeated requests for reevaluation, submission of additional information documenting the damages and cost of repairs, and submission of expert reports and opinions as to why repairs are not possible as Philadelphia's engineer claims.

10. Philadelphia has also unreasonably acted in bad faith by attempting to deny Plaintiff's owed benefits by claiming that although Plaintiff has paid for Code and Ordinance Upgrade coverage, Philadelphia would not pay for such upgrades unless Plaintiff could prove that such codes or ordinances would, in fact, be enforced during construction.

11. Plaintiff now seek damages because of Philadelphia's breach of the insurance contract with Plaintiff, as well as Philadelphia and Engle Martin's unreasonable handling of

2

Plaintiff's claim and the unreasonable delay and denial of benefits under its commercial property insurance policy.

## JURISDICTION AND VENUE

12. Venue is proper in this Court pursuant to C.R.C.P. 98(c), which Plaintiff designates as the place of trial, and because Defendant Philadelphia is a non-resident and may be found doing business in this county.

13. The Court has personal jurisdiction over Defendant Philadelphia in this matter, upon service of process, pursuant to C.R.S. § 13-1-124 because Philadelphia conducts systematic and continuous insurance business in the state of Colorado.

## GENERAL ALLEGATIONS

14. On or about December 15, 2021, an extreme windstorm (Windstorm) occurred across Colorado.

15. During the Windstorm, wind gusts of 60 to 110 miles per hour occurred throughout the state.

16. On or about December 15, 2021, the Windstorm caused power outages, road closures, and property damage throughout the Denver-Metro area.

17. On or about December 15, 2021, the Windstorm caused wind damage to Plaintiff's Property, including, but not limited to, damage to the Property's slate tile roof.

18. On or about December 15, 2021, Plaintiff's Property was insured by Philadelphia under a commercial property insurance policy, policy #PHPK2328140 (Policy).

19. On or about December 15, 2021, Plaintiff's premium payments for its Policy were current.

20. On or about February 18, 2022 Plaintiff filed a claim for damages with Philadelphia because of the Windstorm, claim #1494691 (Claim).

21. On or about March 1, 2022, Plaintiff retained the services of public adjuster Peter Ridulfo of Claims Pro Public Adjuster to assist with its Claim with Philadelphia.

22. On or about March 1, 2022, Mr. Ridulfo sent Philadelphia a notice of representation notifying them of his retention by Plaintiff.

23. In his notice of representation, Mr. Ridulfo requested a certified copy of Plaintiff's policy.

24. Upon information and belief, on or about March 3, 2022, Philadelphia contacted Engle Martin as a third-party administrator to adjust Plaintiff's Claim on behalf of Philadelphia.

3

25. On or about March 4, 2022, Engle Martin issued a Reservation of Rights letter advising Plaintiff and Mr. Ridulfo of Plaintiff's duties in the event of a loss, exclusions under which Philadelphia would not pay for a loss, and limitations to payment of losses.

26. The Reservation of Rights letter also required Plaintiff to fully document and fill out an enclosed Proof of Loss form included with the letter.

27. The Reservation of Rights letter invited Plaintiff or Mr. Ridulfo to contact Engle Martin if there were any questions.

28. Following receipt of the Reservation of Rights letter, Mr. Ridulfo contacted the adjuster at Engle Martin, Keith Schmelling, to discuss Plaintiff's Claim.

29. During the previously referenced conversation between Mr. Ridulfo and Mr. Schmelling, Mr. Schmelling indicated he was going to bring an engineer with him to the first property inspection with Mr. Ridulfo. When Mr. Ridulfo asked him why he felt an engineer was necessary so early in the claim's investigation, Mr. Schmelling stated, "who is a court going to believe, you, me or an engineer?"

30. On or about March 15, 2022, Mr. Schmelling met Mr. Ridulfo to inspect the Property, accompanied by engineer William Templeton of Pro Net Group (Pro Net).

31. Following the March 15, 2022, inspection, neither Philadelphia nor Engle Martin would respond to Mr. Ridulfo's attempts at communication, including his continued requests for a certified copy of Plaintiff's Policy, as well as a copy of Pro Net's engineering report and a response to his request for an extension to the sixty day deadline to submit a Proof of Loss.

32. On May 2, 2022, Mr. Ridulfo submitted the first Proof of Loss for Plaintiff's Claim (First Proof of Loss) stating that he would need to supplement the First Proof of Loss.

33. Mr. Ridulfo was forced to submit an incomplete First Proof of Loss due to Philadelphia and Engle Martin's refusal to respond to his communications.

34. The First Proof of Loss stated Plaintiff's damages were $466,762.17.

35. The First Proof of Loss included an itemized scope of damages.

36. On May 12, 2022, Engle Martin responded to Mr. Ridulfo's letter and the First Proof of Loss, rejecting it and denying Plaintiff's Claim (First Denial).

37. In its First Denial, Engle Martin pointed out typos, missing information, or inconsistencies in the First Proof of Loss as reasons for rejecting it and denying Plaintiff's Claim.

38. In its First Denial, Engle Martin also stated that the First Proof of Loss and Claim was denied because it was "overstated in value of damage" and "possible other reasons exist."

39. Included with Engle Martin's First Denial was a report prepared by Pro Net, based on Pro Net's March 15, 2022, inspection.

40. In its First Denial, Engle Martin claimed that Pro Net's inspection had determined that the copper nails had corroded over time, detached from the roof, and allowed some of the tiles to loosen further due to wind.

41. In its First Denial, Engle Martin claimed that the loose tiles on Plaintiff's Property's roof were caused by multiple events, despite the fact that the Windstorm was so extreme it garnered national attention.

42. In its First Denial, Engle Martin claimed that the investigation was ongoing, however at the end of the letter states that it would be closing its file and recommending to Philadelphia to do the same.

43. In its First Denial, Engle Martin claimed that the total scope of damages to the Property was $20,600.01.

44. In its First Denial, Engle Martin claimed that the total of Plaintiff's damages were below its deductible, and that Philadelphia was not liable for any payment of Plaintiff's Claim.

45. In its First Denial, Engle Martin claimed that the damages to the Property's roof could be repaired.

46. Due to the type of slate tile roof the Property has, repair of individual tiles is not an option.

47. Engle Martin's estimate of damages did not include all of Plaintiff's damages.

48. Engle Martin's estimate of damages did not fully compensate Plaintiff for its losses as a result of the Windstorm.

49. Engle Martin did not conduct a complete and fair investigation based on all the facts available.

50. On or about June 1, 2022, Mr. Ridulfo responded to Engle Martin's denial, and sent this response to Philadelphia as well due to the difficulties in receiving a response from Engle Martin in the past.

51. The June 1, 2022 response letter (June 1 Letter) again requested a certified copy of the Plaintiff's policy.

52. The June 1 Letter also points out that Pro Net's report claimed that used materials could be used to repair Plaintiff's damage.

53. Plaintiff's Policy does not call for the use of used materials for repairs.

54. The June 1 Letter points out factual inaccuracies with Engle Martin's First Denial.

55. On June 14, 2022, Mr. Ridulfo submitted a corrected proof of loss correcting the typos pointed out in Engle Martin's First Denial and informing Philadelphia and Engle Martin that further supplements will be submitted.

56. On June 15, 2022, Engle Martin responded to the corrected proof of loss by stating that Engle Martin "did not review the [corrected proof of loss] in detail, but [Engle Martin does] need to advice you the second submission…is still rejected for being overstated, and possibly other reasons unstated at this time."

57. On July 27, 2022, Engle Martin responded in more detail to Mr. Ridulfo's corrected proof of loss and June 1 Letter.

58. In its July 27, 2022, letter (July 27 Letter), Engle Martin stated that Plaintiff's Property damage to its roof was caused by multiple wind occurrences.

59. The July 27 Letter included a second report by Pro Net addressing Mr. Ridulfo's concerns.

60. The second report included with the July 27 Letter did not change any of the original findings.

61. The second report included with the July 27 Letter was not based on any new or additional information and was based on the original inspection report from April 7, 2022.

62. Neither Engle Martin, nor Pro Net, gave any basis as to what other wind events would have caused this wind damage.

63. In its July 27 Letter, Engle Martin stated that the damages to Plaintiff's Property was below the deductible.

64. The July 27 Letter from Engle Martin did not request an additional inspection of the Property.

65. The July 27 Letter did not consider any of the additional information provided to Engle Martin by Mr. Ridulfo.

66. The July 27 Letter was not a complete and fair investigation based on all facts available at the time.

67. In response to Engle Martin's denial of the corrected proof of loss, Plaintiff retained slate roof expert John Chan, of The Durable Slate Company, to perform a roof survey of the Property.

68. In his survey, Mr. Chan opines that 800 pieces of slate were damages from wind, an additional 300 pieces of slate are loose due to uplift.

69. Plaintiff also obtained documentation from the City of Parker stating what it would require for code if the roof were to be replaced.

6

70. Plaintiff also obtained a wind and hail report for recent severe weather events that had happened at or about the vicinity of the Property (Wind Report).

71. The Wind Report showed three prior events to the Windstorm, the longest of which lasted six minutes.

72. The Windstorm reported winds of up to 85 miles per hour and lasted 360 minutes.

73. Plaintiff also gathered additional information regarding its Property's slate roof.

74. On or about October 28, 2022, Mr. Ridulfo, on behalf of the Plaintiff, submitted a third complete Proof of Loss (Final Proof of Loss) to Philadelphia and Engle Martin.

75. Included with the Final Proof of Loss was Mr. Chan's survey report, the Wind Report, and guidelines stating what was required for installation of a slate tile roof.

76. On or about November 10, 2022, Engle Martin responded to Mr. Ridulfo stating that Philadelphia had requested that it reopen its claim file regarding Plaintiff's Claim.

77. On or about November 10, 2022, Engle Martin rejected the Final Proof of Loss for being "overstated" among other reasons.

78. No further explanation of Engle Martin's denial of Plaintiff's Claim was given.

79. No further investigation into Plaintiff's claim was performed by Engle Martin at that time.

80. No further inspection was requested at that time by Engle Martin.

81. No further inspection was requested at that time by Philadelphia.

82. On or about December 12, 2022, Engle Martin contacted Mr. Ridulfo regarding scheduling an inspection by a roofing company, Formula Roofing, to assess the wind damage to Plaintiff's Property.

83. On or about December 20, 2022, Mr. Ridulfo responded to Engle Martin's request for an inspection stating that Plaintiff was consulting with legal counsel and that he was unable to provide access to the Property at that time.

84. On or about December 20, 2022, in response to Mr. Ridulfo's email, Engle Martin claimed that it had not denied Plaintiff's Claim and that "as of the writing of this email, we have not yet determined how many occurrences have occurred causing the damage inspected on March 15, 2022."

85. On January 30, 2023, Mr. Ridulfo advised Philadelphia and Engle Martin that, as a result of the damage to the Property's roof from the Windstorm, leaks had developed and were causing interior damage, and providing photographs of the leak at the Property.

86. On or about January 30, 2023, Philadelphia sent a letter to Mr. Ridulfo denying Plaintiff's Claim, stating that the damage to the Property was below Plaintiff's deductible.

87. Philadelphia did not conduct a complete and fair investigation based on all the facts available.

88. Engle Martin did not conduct a complete and fair investigation based on all the facts available.

89. Philadelphia, as a first-party insurer for Plaintiff, owes Plaintiff a duty of good faith and fair dealing in all actions taken while adjusting Plaintiff's Claim.

90. Engle Martin, as a third-party administrator for Philadelphia, owes Plaintiff a duty of good faith and fair dealing in all actions taken while adjusting Plaintiff's Claim on behalf of Philadelphia.

91. Philadelphia did not act in good faith when evaluating and adjusting Plaintiff's Claim.

92. Engle Martin did not act in good faith when evaluating and adjusting Plaintiff's Claim.

## UNREASONABLE CLAIMS PRACTICES AND ACTS OF BAD FAITH

93. C.R.S. § 10-3-1104(1)(b)(III) states that it is a prohibited deceptive practice for an insurer to "knowingly make any false entry of a material fact in any book, report, or other written statement of any insurer" or "knowingly [omit or fail] to make a true entry of a material fact pertaining to the business of the insurer in any book, report, or other written statement of the insurer."

94. C.R.S. § 10-3-1104(h)(III) states that it is an unfair claim settlement practice to "[fail] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies."

95. C.R.S. § 10-3-1104(h)(IV) states that it is an unfair claims settlement practice to "[refuse] to pay claims without conducting a reasonable investigation based upon all available information."

96. C.R.S. § 10-3-1104(h)(VII) states that it is an unfair claims settlement practice to "[compel] insureds to institute litigation to recovery amounts due under an insurance policy by offering substantially less than the amount ultimately recovered in actions brought by such insureds."

97. All actions taken on behalf of Philadelphia by a third party while adjusting or evaluating Plaintiff's claim are imputed to Philadelphia as though taken by Philadelphia itself.

98. Philadelphia knowingly made false entry of material fact when Philadelphia misrepresented the scope of Plaintiff's damages following the inspection by Pro Net.

99. Philadelphia knowingly made false entry of material fact when Philadelphia misrepresented that Plaintiff refused to allow any further inspections.

100. Philadelphia knowingly made false entry of material fact when, as a third-party administrator, Engle Martin, on behalf of Philadelphia, stated that it had not denied Plaintiff's Claim.

101. Philadelphia knowingly made false entry of material fact when, as a third-party administrator, Engle Martin, on behalf of Philadelphia, stated that it had not yet determined how many windstorms were the cause of the damage to Plaintiff's Property.

102. Philadelphia failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies when, as a third-party administrator, Engle Martin, on behalf of Philadelphia rejected Plaintiff's multiple proof of loss statements without further investigation.

103. Philadelphia unreasonably participated in unfair claim settlement practices by not implementing reasonable standards for the prompt investigation of Plaintiff's claim by delaying reasonable evaluation of the fair value of Plaintiff's claim.

104. Philadelphia unreasonably participated in unfair claim settlement practices by refusing to pay Plaintiff's claim without conducting a reasonable investigation based on all available information when it refused to accept Plaintiff's various proof of loss statements as "overstated" without additional investigation.

105. Philadelphia unreasonably participated in unfair claim settlement practices by refusing to pay Plaintiff's claim without conducting a reasonable investigation based on all available information when it failed to review additional relevant information provided by Plaintiff regarding the damage to Plaintiff's Property.

106. Philadelphia unreasonably participated in unfair claim settlement practices by refusing to pay Plaintiff's claim without conducting a reasonable investigation based on all available information when it refused to conduct further investigation based on Plaintiff's additional information, instead denying Plaintiff's Claim prior to reviewing the additional information.

107. Philadelphia unreasonably delayed and denied owed benefits under Plaintiff's Policy by forcing Plaintiff to incur out-of-pocket expenses to pay for costs associated with reasonably investigating Plaintiff's Claim to dispute Philadelphia's denial of the Claim.

108. Philadelphia unreasonably participated in unfair claim settlement practices by compelling Plaintiff to institute litigation in order to recover benefits owed under the Policy when it unreasonably delayed and denied the Claim and refused to reasonably and fairly investigate Plaintiff's damages as a result of the Windstorm.

9

## CLAIMS FOR RELIEF

### First Claim for Relief
### (Breach of Contract- Philadelphia)

109. Plaintiff incorporates all the above allegations of this Complaint as if fully set forth herein.

110. The Insurance Policy between Plaintiff and Philadelphia is a binding contract.

111. Pursuant to the Policy, Philadelphia must pay for all damages covered by the Policy.

112. Plaintiff paid premiums and otherwise performed all conditions precedent to recovery of benefits under the Policy with Philadelphia.

113. Philadelphia has failed to pay Plaintiff for damages from the Windstorm covered by the Policy.

114. By failing to pay Plaintiff for damages sustained from the Windstorm, which are covered under the Policy, Philadelphia has breached the Policy.

115. As a direct, immediate, and proximate result of Philadelphia's breaches of the Policy, Plaintiff has suffered injuries, damages, and losses in an amount to be proven at trial.

### Second Claim for Relief
### (Violation of C.R.S. §§ 10-3-1115, 1116-Philadelphia)

116. Plaintiff incorporates all the above allegations of this Complaint as if fully set forth herein.

117. Plaintiff is a first-party claimant who is owed policy benefits as an Insured under its Policy with Philadelphia.

118. Accordingly, Philadelphia has a statutory duty not to unreasonably delay or deny those benefits to Plaintiff.

119. As alleged herein, Philadelphia has delayed and/or denied payment of covered benefits to Plaintiff without a reasonable basis for that action.

120. As a direct and proximate result of Philadelphia's unreasonable delay and denial, Plaintiff has suffered injuries, damages, and losses in an amount to be proven at trial.

121. Plaintiff is entitled to all remedies allowed by C.R.S. § 10-3-1116, including two times the covered benefit, reasonable attorneys' fees, and costs.

122. Plaintiff's request for damages under C.R.S. § 10-3-1116 does not limit or effect other actions available by statute or common law, now or in the future.

## Third Claim for Relief
### (Common Law Bad Faith Breach of Contract-Philadelphia)

123. Plaintiff incorporates all the above allegations of this Complaint as if fully set forth herein.

124. Plaintiff is a first-party claimant who is owed policy benefits as insureds under their Policy with Philadelphia.

125. Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds.

126. Pursuant to its implied duty of good faith and fair dealing, Philadelphia owed to Plaintiff an obligation to treat Plaintiff's interests with equal consideration to its own interests.

127. Philadelphia has breached its duty of good faith and fair dealing owed to Plaintiff, and its conducted fell below the standard of care of a reasonably prudent insurer doing business in the State of Colorado in one or more of the following manners:

a) Failing to give equal consideration to the interest of Plaintiff, its insured;

b) When investigating Plaintiff's claims, failing to diligently search for evidence that supported its insured's (Plaintiff's) claims;

c) Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits;

d) Depriving Plaintiff of the benefits and protections of the contract of insurance;

e) Refusing to negotiate or to respond to requests for information made by Plaintiff's counsel and/or representative in a timely manner;

f) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

g) Not attempting in good faith to effectuate fair and equitable settlement of the claim after its liability has become reasonably clear;

h) Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by failing to pay expenses owing and/or by denying additional living expenses benefits which Plaintiff is entitled to in a timely manner;

i) Forcing Plaintiff into the costly and lengthy process of litigation; and

j) Any further acts which may be discovered.

128. As alleged herein, Philadelphia's conduct was unreasonable and Philadelphia either knew such conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

129. As a direct and proximate result of Philadelphia's breach of its duty of good faith and fair dealing in its conduct in handing Plaintiff's Claim, Plaintiff has suffered injuries, damages, and losses in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment in their favor and against Philadelphia as follows:

a) For all consequential compensatory economic and non-economic damages, caused by the Marshall Fire, which is not specifically excluded under the Policy;

b) For all consequential extra-contractual compensatory damages caused by Philadelphia's tortious conduct, including non-economic damages for emotional stress, aggravation, annoyance, inconvenience and other harm suffered by Plaintiff;

c) For all pre-and post-judgment interest, statutory or moratory, allowed by law;

d) For statutory penalties under C.R.S. §10-3-1116 equal to two times the amount of the benefits that were wrongly and unreasonably delayed and/or denied;

e) For reasonable attorneys' fees and costs of suit incurred in bringing this action as permitted under C.R.S. §10-3-1116;

f) For all other damages, injuries, and losses to be revealed in the prosecution of this matter; and

g) For any such other and further relief as the Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES**

Respectfully submitted this 13th day of February 2023.

KEN FIEDLER INJURY LAW

*Duly signed original on file at Ken Fiedler Injury Law*

*/s/ James R. Anderson*
Kenneth R. Fiedler, #46934
James R. Anderson, #49511
4725 S. Monaco St., Ste. 120
Denver, CO 80237
Tel. (720) 996-6000

Fax (720) 696-7962

<u>Plaintiff's Address</u>:
c/o Ken Fiedler Injury Law
4725 S. Monaco St., Suite 120
Denver, CO 80237

13