IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-00594-SKC-TPO

SIMCHAT TORAH BEIT MIDRASH, a nonprofit corporation,

　　Plaintiff,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

　　Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO
EXCLUDE EXPERT TESTIMONY OF PETER RIDULFO
(DKT. 56)**

---

　　The above-referenced Motion is now before the Court. No hearing is necessary to aid the Court's ruling. This is an insurance bad faith case arising from a windstorm which Plaintiff claims damaged the custom slate roof tiles of Plaintiff's synagogue and broadcasting station. As a result of the damage, Plaintiff made a claim with its insurance carrier, Defendant Philadelphia Indemnity Insurance Company, under a property insurance policy.

　　Plaintiff hired Peter Ridulfo of Claims Pro Public Adjusters (collectively, "Ridulfo") to help Plaintiff process its claim with Defendant under the insurance policy. Based on the contract between Plaintiff and Ridulfo, Plaintiff is to compensate Ridulfo a contingent fee of the lesser of 10 percent of the "whole amount of loss" or 15

1

percent of the net increase to the "whole amount of loss." Dkts. 56-1, pp.1, 4. Their contract defines "whole amount of loss" to include damages recovered in litigation. *Id.* at p.1.

In this litigation, Plaintiff disclosed Ridulfo as a non-retained expert under Fed. R. Civ. P. 26(a)(2)(B)(II). In relevant part, Plaintiff described Ridulfo's expected testimony in this way:

> Mr. Ridulfo is a public adjuster who Plaintiff retained to represent it on this claim. Mr. Ridulfo has information and knowledge concerning all issues related to Plaintiff's claim including, but not limited to: Plaintiff's damages caused by the subject hailstorm; the repairs necessary to make Plaintiff whole; the unreasonable acts taken by Defendant which delayed or denied Plaintiff's owed benefits; the reasonable steps taken by Plaintiff to cooperate with Defendant in adjusting its claim; and Plaintiff's insurance policy which provides coverage for the damages caused by the hailstorm. Mr. Ridulfo will also have specialized knowledge of claims handling practices and standards in the industry, as well as insurance and construction regulations related to repairs.
>
> . . . His testimony is expected to include but is not limited to Colorado's insurance claims handling practices and standards, case law and statutes, and Division of Insurance bulletins and guidelines.
>
> . . . He will also testify to his opinion on what Defendant's duty was to Plaintiff and how Defendant's actions were unreasonable and breached that duty. He will also testify as to his actions and how Plaintiff, by way of his representation and by its actions, reasonably cooperated and complied with the terms of its insurance policy with Defendant. . . . Mr. Ridulfo will testify to the scope of damages submitted to Defendant in the Proofs of Loss and his basis for those damages, the information he gathered substantiating those damages, and why he believed that those damages were appropriate [and] his opinion regarding third-party adjuster Keith Schmelling's actions as a representative of Defendant and how these actions were unreasonable and put Defendant's interests before those of Plaintiff.

Dkt. 56-1, p.10.

Defendant argues that Ridulfo should be precluded from testifying as an expert in this case because his direct financial interest in the outcome of the litigation—i.e., his contingent fee arrangement with Plaintiff—renders his opinions unreliable. Defendant claims excluding Ridulfo's expert testimony would not prejudice Plaintiff because Plaintiff disclosed three specially retained experts who are redundant of Ridulfo's purported expert opinions—specifically, John Kezer, who will testify regarding insurance industry standards and the reasonableness of Defendant's claims handling; John Chan, who will testify about the cause and damage to the slate roof; and David Phalen, who will testify about the alleged costs associated with Plaintiff's scope of repair.

Plaintiff contends Ridulfo's testimony would be to his observations as a public adjuster and his expert testimony would only be so that he could explain why he made the decisions and observations he did during his work for Plaintiff. It's Plaintiff's position that Ridulfo is not being offered as a retained expert and is not being compensated for his opinion contingent on any outcome of this trial but instead is providing testimony as a non-retained expert, discussing the facts related to the claims process and testifying with expertise in the area of claims adjusting as a public adjuster.

## LEGAL PRINCIPLES

"The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). A

3

witness who qualifies as an expert by knowledge, skill, experience, training, or education may offer their opinions at trial if the proponent satisfies the court that it is more likely than not: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

The district court performs an important gatekeeping function to assure expert testimony meets these requirements. *Macsenti v. Becker*, 237 F.3d 1223, 1230-34 (10th Cir. 2001). Even still, courts are mindful that "Rule 702 mandates a liberal standard" for the admissibility of expert testimony. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006). The rejection of expert testimony has proven "the exception rather than the rule." Fed. R. Evid. 702, advisory committee notes (2000 amendments). The decision to admit or exclude expert testimony is committed to the sound discretion of the district court. *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 603 (10th Cir. 1997).

## ANALYSIS AND FINDINGS

The Court finds Ridulfo's agreement with Plaintiff gives him a financial stake in the outcome of this case. That agreement expressly provides that Plaintiff is to compensate Ridulfo a contingent fee of the lesser of 10 percent of the "whole amount

4

of loss" or 15 percent of the net increase to the "whole amount of loss," defining "whole amount of loss" to include damages recovered in this litigation. Dkts. 56-1, pp.1, 4.

Whether Ridulfo's financial stake in the outcome of this case renders him incompetent to testify as an expert witness is governed by state law in this diversity case. Fed. R. Evid. 601. Colorado courts recognize "a settled principle of American law" that "expert witnesses should not receive contingent fees." *City & Cnty. of Denver v. Bd. of Assessment of the State of Colo.*, 947 P.2d 1373, 1379 (Colo. 1997). When an expert "obtains a direct financial interest in the outcome of the litigation . . ., any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded." *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d 1187, 1210 (D. Colo. 2022) (cleaned up). This is because "[i]n the specific context of expert testimony, the usefulness of an expert witness depends in large measure on the degree to which the expert is able to convince the trier of facts of his or her strict and unyielding impartiality to both the parties and their counsel, and to the issues in the case." *Calfox, Inc. v. Certain Underwriters at Lloyd's, London Subscribing to Certificate No. T0530bp1eb10018*, No. 20-cv-02443-RM-KMT, 2024 WL 1051948, at *10 (D. Colo. Mar. 11, 2024) (cleaned up).

"Some courts in this District, following the guidance of Colorado state courts, apply a balancing test under Rule 403 to determine whether an expert witness's financial stake in a case warrants the expert's exclusion." *Mordhorst Cleaning, LLC v. Am. Strategic Ins. Corp.*, No. 23-CV-00017-NYW-MEH, 2024 WL 4932505, at *4

5

(D. Colo. Dec. 2, 2024) (citing cases); *see also Midtown Invs., LP v. Auto-Owners Ins. Co.*, 641 F. Supp. 3d 1066, 1075 (D. Colo. 2022). This Court finds the Rule 403 balancing test is warranted here to determine whether the potential of unfair prejudice that may result from allowing Ridulfo's expert opinions outweighs any probative value of those opinions. "[T]he question of whether an improperly-compensated expert may testify is left to the sound discretion of the trial court, to be determined on a case-by-cas[e] basis, based on the reliability of that testimony under all the circumstances." *Hiland Hills Townhouse Owners Ass'n v. Owners Ins. Co.*, No. 17-CV-01773-MSK-MEH, 2022 WL 2198262, at *9 (D. Colo. Feb. 8, 2022).

The Court agrees with the line of cases which find, under circumstances like those here, the probative value of the opinions of an expert who has a financial stake in the outcome of the case is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; *Midtown Invs., LP v. Auto-Owners Ins. Co.*, 641 F. Supp. 3d at 1076 ("The Court finds that Mr. Bezek's opinion testimony, given his financial interest in the outcome of litigation, presents a danger of unfair prejudice to Owners that substantially outweighs its probative value[.]"); *Wheatridge Off., LLC v. Auto-Owners Ins. Co.*, 578 F. Supp. 3d at 1211 (excluding expert testimony under Fed. R. Evid. 403 because it was the expert's "financial interest in the outcome of the case that creates the conflict of interest."); *Mordhorst Cleaning, LLC*, 2024 WL 4932505, at *5 ("Permitting a conflicted expert with a financial stake in the ultimate valuation determination to testify *about valuation* and other related topics presents the

significant danger of unfair prejudice to Defendant.") (emphasis in original). Exclusion under these circumstances is not a sanction, but rather, it is the Court's appropriate exercise of "its gatekeeping function to protect the integrity of the judicial process." *Wheatridge Off., LLC*, 578 F. Supp. 3d at 1211.

The Court further finds little prejudice to Plaintiff in precluding Ridulfo's expert opinions for two reasons. First, Plaintiff has disclosed three specially retained experts whose testimony is seemingly cumulative of the opinions Ridulfo would otherwise offer. Dkt. 56-1, ¶1 (disclosing John Kezer, Esq., to offer opinions re: insurance claims handling standards and practices and the "unreasonable actions taken by Defendant during its adjusting of Plaintiff's subject claim."); *id.* at ¶2 (disclosing John Chan to offer opinions re: slate tile roofs and the damage caused by the windstorm which impacted Plaintiff's roof, that the damage is consistent with wind damage and uplift, and that "city codes and direction on repairs and replacement of roofs is the final word on what must be followed."); Dkt. 56, pp.5, 10 (referring to Plaintiff's disclosure of David Phalen "as its costing expert" "who will testify about the alleged costs associated with [Plaintiff's] scope of repair.").

Second, because Ridulfo wears two hats—Plaintiff offers him as a fact witness and an expert witness—the Court will allow Ridulfo to testify as a fact witness. He may testify to his actions and the events that occurred during the claim process with Defendant.

7

For the reasons shared above, the Court finds Ridulfo's expert opinions are precluded under Fed. R. Evid. 403. The Motion is GRANTED.

DATED: March 1, 2025

BY THE COURT:

_____
S. Kato Crews
United States District Judge

8